# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

TRACY LOUISE RIVERA,

        Plaintiff,

v.                                     Case No. 5:21-cv-623-JRK

KILOLO KIJAKAZI,
Acting Commissioner of Social
Security,

        Defendant.
_____

## OPINION AND ORDER[1]

### I.  Status

Tracy Louise Rivera ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of difficulty walking, dizziness, severe migraines, fainting, stomach issues, anemia, low blood pressure, leg cramps, and situational vertigo. See Transcript of Administrative Proceedings (Doc. No. 15; "Tr." or "administrative transcript"), filed March 24, 2022, at 114, 127, 279. Plaintiff protectively filed an application for DIB on May 16, 2018, alleging a disability onset date of

---

[1]  The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 14), filed March 24, 2022; Reference Order (Doc. No. 16), entered March 29, 2022.

August 27, 2012.[2] Tr. at 251-52. The application was denied initially, Tr. at 113-24, 125, 145, 146-48, and upon reconsideration, Tr. at 126-39, 140, 150, 151-56.

On August 21, 2019, an Administrative Law Judge held a hearing, during which she heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 64-97. On January 8, 2021, the ALJ held a supplemental hearing, during which she heard testimony from Plaintiff, who was represented by different counsel; another VE; and a medical expert ("ME").[3] See Tr. at 32-63. Because Plaintiff had a prior application for DIB that had been adjudicated by an ALJ on June 22, 2017, Tr. at 101-08, and the ALJ found no basis for reopening this prior decision, the ALJ used June 23, 2017 (the day after the prior decision) as the official alleged onset date for the current claim but also "considered the [current] claim as of August 27, 2012," the actual alleged onset date, Tr. at 12, 24. On February 17, 2021, the ALJ issued a Decision finding Plaintiff not disabled through June 30, 2018, the date Plaintiff was last insured for DIB. See Tr. at 11-24.

---

[2] Although actually filed on May 17, 2018, see Tr. at 251, the protective filing date for the DIB application is listed elsewhere in the administrative transcript as May 16, 2018, see, e.g., Tr. at 113, 127.

[3] This hearing was held via telephone with Plaintiff's consent because of the extraordinary circumstances presented by the COVID-19 pandemic. Tr. at 12, 34.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council and submitted a brief in support of the request. See Tr. at 5-6 (Appeals Council exhibit list and order), 247-50 (request for review), 376-77 (Plaintiff's brief). On November 16, 2021, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On December 23, 2021, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues "[t]he Commissioner failed to sustain her burden of proof at step five of the sequential evaluation process" because of the VE's improper reliance on certain data to support the VE's testimony about the number of jobs available in the national economy that Plaintiff can perform. Plaintiff's Brief (Doc. No. 19; "Pl.'s Br."), filed June 13, 2022, at 1, 5-9. On July 8, 2022, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 20; "Def.'s Mem."), responding to Plaintiff's argument. After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for reconsideration of the step five findings regarding the jobs available in the national economy that Plaintiff can perform.

## II.   The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 15-24. At step one, the ALJ determined Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date through her date last insured of June 30, 2018 [('DLI')]." Tr. at 15 (emphasis and citation omitted). At step two, the ALJ found that "[t]hrough the [DLI, Plaintiff] had the following

---

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

severe impairments: obesity status-post gastric bypass surgery, vertigo, migraines, anemia, and degenerative joint disease of the left knee." Tr. at 15 (emphasis and citation omitted). At step three, the ALJ ascertained that "[t]hrough the [DLI, Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 17 (emphasis and citation omitted).

The ALJ determined that through the DLI, Plaintiff had the following residual functional capacity ("RFC"):

> [Plaintiff could] perform sedentary work as defined in 20 [C.F.R. §] 404.1567(a). She could lift/carry/push/pull 10 pounds occasionally and a negligible amount frequently, stand and/or walk 2 hours and sit 6 hours in an 8-hour workday with normal breaks. She could stand and/or walk no more than 15 minutes at one time, and could not walk on uneven terrain. She required use of a cane for standing and walking. She could not push or pull with the left lower extremity. [Plaintiff] could never climb ladders, ropes, or scaffolds. [Plaintiff] could never climb ramps or stairs. [Plaintiff] could occasionally stoop and balance but could never kneel, crouch, crawl. [Plaintiff] could have no exposure to unprotected heights or dangerous moving machinery. [Plaintiff] could never operate a motor vehicle as part of her job duties. [Plaintiff] could have occasional exposure to temperatures under 40 degrees and over 90 degrees Fahrenheit. She was limited to work in an environment with no more than a moderate noise level, as defined in the SCO.[5]

Tr. at 17 (emphasis omitted). At step four, the ALJ relied on the testimony of the VE and found that "[t]hrough the [DLI, Plaintiff] was unable to perform any

---

[5] SCO is believed to stand for the Selected Characteristics of Occupations, which is a companion publication to the Dictionary of Occupational Titles ("DOT").

past relevant work" as a "sales agent, insurance" and an "administrative clerk." Tr. at 22 (some emphasis and citation omitted). At the fifth and final step of the sequential inquiry, after considering Plaintiff's age ("49 years old . . . on the date last insured"), education ("at least a high school education"), work experience, and RFC, the ALJ again relied on the VE's testimony and found that "[t]hrough the [DLI], there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed," Tr. at 22-23 (emphasis and citation omitted), such as "Addresser," "Loader," and "Call out operator," Tr. at 23. The ALJ concluded Plaintiff "was not under a disability . . . at any time from June 23, 2017, the alleged onset date, through June 30, 2018, the [DLI]." Tr. at 24 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Plaintiff argues the ALJ erred at step five in determining there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Pl.'s Br. at 5-9. Specifically, Plaintiff contends the ALJ inappropriately relied on the VE's testimony about the numbers of jobs available, especially in light of her counsel's unresolved objection about the VE's use of a software program produced by SkillTRAN. Id. at 6-7. Plaintiff concludes that "the ALJ's reliance on the VE's testimony . . . is not adequately supported and this case should be remanded for further administrative proceedings." Id. at 9.

Responding, Defendant argues Plaintiff has not shown "that the VE did not bring his own experience and judgment to bear on his testimony." Def.'s Mem. at 6 (citation omitted). According to Defendant, the ALJ was permitted to rely on the VE's testimony "absent any evidence in the record contradicting the VE's testimony or suggesting it is unreliable." Id. at 8.

At step five in the sequential inquiry, "the ALJ must determine if there is other work available in significant numbers in the national economy that the claimant has the ability to perform." Phillips, 357 F.3d at 1239. To make this determination, the ALJ may pose a hypothetical question to a VE. See Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing Wolfe v. Chater, 86 F.3d 1072, 1077-78 (11th Cir. 1996)); see also Zimmer v. Comm'r of Soc. Sec., 211 F. App'x 819, 820 (11th Cir. 2006) (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir.1999) ("An ALJ relies on the testimony of a [VE] to determine what level of skill the claimant achieved in his [or her] past work, whether the claimant has transferable skills, and whether the claimant can perform other jobs.")). "In order for a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson, 284 F.3d at 1227 (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999)).

If there are "apparent conflicts" between a VE's testimony and the DOT, the ALJ must identify them, "ask the VE about them, and explain how the

- 8 -

conflict was resolved in the ALJ's . . . [D]ecision." Washington v. Comm'r of Soc. Sec., 906 F.3d 1353, 1365 (11th Cir. 2018); see also Viverette v. Comm'r of Soc. Sec., 13 F.4th 1309, 1314 (11th Cir. 2021). The ALJ is required to "articulate specific jobs" that exist in the national economy "that the claimant can perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989) (citation omitted). "[W]ork exists in the national economy when it exists either in significant numbers in the region where [the claimant] work[s] or in several other regions of the country." 20 C.F.R. § 404.1566(a); see also 42 U.S.C. § 1382c(a)(3)(B).

The Supreme Court has stated that "expert testimony can sometimes surmount" the substantial evidence bar "absent underlying data." Biestek v. Berryhill, 139 S. Ct. 1148, 1152, 1156 (2019). As well, the United States Court of Appeals for the Eleventh Circuit has recognized that the use of the software program from SkillTRAN may be an effective method of determining the number of jobs available "to be used in conjunction with [a VE's] knowledge and expertise." Goode v. Comm'r of Soc. Sec., 966 F.3d 1277, 1284 (11th Cir. 2020). The Eleventh Circuit, however, has so far "express[ed] no view on the merits" of the use of SkillTRAN. Id.

Here, during the January 8, 2021 hearing before the ALJ, the following exchange occurred between Plaintiff's counsel and the VE:

> Q      Now I've heard these sedentary jobs, you know, by other vocational experts, your numbers seem quite high today. How did you calculate the number of jobs available in the national economy?
>
> A      I utilized the acceptable source from the Social Security Administration, Job Browser Pro - -
>
> Q      Is that - -
>
> A      - - which - - that utilizes the Occupational Employment Survey put out by the Bureau of Labor Statistics.
>
> Q      Okay. Is that SkillTRAN?
>
> A      Yes.
>
> Q      Okay. And do you know how SkillTRAN calculates those numbers?
>
> A      SkillTRAN has several pages on their website with details how they compute those and how they sort the data that's obtained through the Occupational Employment Survey, so I'd refer you to that to determine how they come - -
>
> Q      So you didn't do any actual research, you plugged - -
>
> A      I did not, I did not manipulate those numbers that they reported, no.
>
> Q      So SkillTRAN did the calculations, not you.
>
> A      Yes.

Tr. at 59-60.

As part of his closing remarks, counsel stated:

> And then in regards to the vocational expert's testimony I would object to the reliance on that. He stated he pretty much plugged the information into

- 10 -

> SkillTRAN and relied solely on those numbers. He didn't do any independent studies or research regarding that.

Tr. at 60.

The ALJ did not resolve the objection during the hearing or in the written Decision. The ALJ recognized in the written Decision, however, that there was a significant discrepancy between the number of addresser jobs identified by the VE in the August 21, 2019 hearing (4,500 jobs, Tr. at 91) and the number of addresser jobs identified by the (different) VE in the January 8, 2021 hearing (71,708 jobs, Tr. at 55). Tr. at 23 n.1. The ALJ resolved this discrepancy as follows: "Even assuming the addresser position was available with only 4,500 positions nationally, the undersigned finds this, combined with the other representative occupations identified, equates to other work existing in significant numbers in the national economy." Tr. at 23 n.1.

The ALJ's failure to resolve counsel's objection to the use of the SkillTRAN data frustrates judicial review such that remand is necessary for the ALJ to make additional findings. As counsel demonstrated through the questioning of the VE, the VE did not do any independent work in determining the number of jobs available in the national economy beyond relying on the data that SkillTRAN put out. See Goode, 966 F.3d at 1284 (emphasis added) (use of SkillTRAN may be an effective method of determining the number of jobs available "to be used in conjunction with [a VE's] knowledge and expertise"). In

addition, the record plainly demonstrates a significant discrepancy from one VE to the other in the testimony about the number of addresser jobs available: the second VE testified there were more than fifteen times the number of addresser jobs available than did the first VE (4,500 vs. 71,708). Compare Tr. at 55, with Tr. at 91. Although the ALJ attempted to end-run the discrepancy by assuming the lower number was correct, the underlying issues remain. That is, whether the use of SkillTRAN in this particular scenario was permissible, and, if so, whether the discrepancy in the addresser position undermines its reliability with respect to any or all of the positions the VE identified.

When "additional (or more specific) agency fact-finding is needed, remand is the appropriate disposition." Viverette, 13 F.4th at 1318 (citation omitted). The matter is due to be reversed and remanded for further consideration of the step-five findings, including resolution of the objection about the use of SkillTRAN.

## V. Conclusion

In light of the foregoing, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A) Reconsider the findings at step five of the sequential evaluation

process, specifically resolving the objection about the use of SkillTRAN; and

(B)  Take such other action as may be necessary to resolve this claim properly.

2.  The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on December 14, 2022.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record